IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| PAUL J. PUGSLEY, | ) | |
| | ) | Case No. CV04-068-S-LMB |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM ORDER** |
| vs. | ) | |
| | ) | |
| JUSTIN COLE, DAVE WILLIAMS, K. | ) | |
| BLACKWOOD, JAY CHRISTENSEN, and | ) | |
| PAM SONNEN, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before the Court are Defendants' Motion for Summary Judgment (Docket

No. 29) and Plaintiff's Motion to Extend Time to File Response (Docket No. 31).  All

parties have consented to the jurisdiction of a United States Magistrate Judge to enter

final orders in this case.  *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  The Court finds

that oral argument is unnecessary.  Having completed a careful review of the record, and

having considered the arguments of the parties, the Court enters the following Order.

## I.

## MOTION TO EXTEND TIME

Plaintiff filed a Motion to Extend Time to File Response (Docket No. 31).  Good

cause appearing, the Motion is granted.  Plaintiff has filed his Response, which the Court

has considered.

**MEMORANDUM ORDER - 1**

## II.

## MOTION FOR SUMMARY JUDGMENT

### A.   Plaintiff's Withdrawal of Certain Claims

In his Memorandum in Opposition to the Motion for Summary Judgment, Plaintiff

has voluntarily withdrawn his official capacity claims (Docket No. 33-1, at pp. 4-5),

except for the claim that the Disciplinary Offense Report (DOR) should be expunged

from his prison files.  He has also withdrawn his claim for injunctive relief for

reclassification.  *See Defendants' Memorandum in Support of Motion for Summary*

*Judgment* (Docket No. 29-2, at p. 8).

### B.   Standard of Law

Summary judgment is appropriate where "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may

affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248

(1986).

In a motion for summary judgment, the moving party bears the "initial burden of

identifying for the court those portions of the record which demonstrate the absence of

any genuine issues of material fact."  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors*

*Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp v. Catrett*, 477 U.S. 317,

322 (1986)).  If the moving party points to portions of the record demonstrating that there

**MEMORANDUM ORDER - 2**

appears to be no genuine issue of material fact as to claims or defenses at issue, the

burden of production shifts to the non-moving party.  To meet its burden of production,

the non-moving party "may not rest upon the mere allegations contained in his complaint,

but he must set forth, by affidavits, exhibits or otherwise, specific facts showing that there

is a genuine issue for trial."  Fed. R. Civ. P. 56; *see T.W. Electric Serv.*, 809 F.2d at 630

(internal citation omitted).

Rule 56(c) requires the Court enter summary judgment "against a party who fails

to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 377

U.S. at 322.  The existence of a scintilla of evidence in support of the non-moving party's

position is insufficient.  Rather, "there must be evidence on which the jury could

reasonably find for the [non-moving party]."  *Anderson v. Liberty Lobby*, 477 U.S. at 252.

**C.      Factual Background**

Plaintiff, an inmate at ISCI, asserts that on December 31, 2001, Defendant

Correctional Officer Justin Cole was working his way through a crowd of about 50

inmates so that he could assist with the pat-search of an inmate at the front of the crowd.

Cole told Plaintiff to move out of his "damn" way.  Plaintiff responded with something to

the effect of, "Yes, I'll get right on that."  *Affidavit of Justin Cole*, at ¶¶ 1-5 (Docket No.

29-4); *Complaint* at ¶ 4 (Docket No. 4).

Next, Defendant Cole asserts that he was reaching for Plaintiff's name tag, while

Plaintiff asserts that Cole was reaching out to grab or strike him.  *Affidavit of Justin Cole*,

**MEMORANDUM ORDER - 3**

at ¶ 7; *Complaint* at ¶ 10.  Where this allegation is material, the Court shall use a version

of the facts most favorable to Plaintiff.

**D.      Physical Injury Requirement for Emotional Distress Claim**

Defendants first assert that Plaintiff's claim is subject to dismissal because

Plaintiff did not suffer a physical injury as a result of the incident with Officer Cole.

Plaintiff concedes that no physical injury occurred in his Response: "The Plaintiff asserts

that where he did not receive any physical injury, he can still show a mental or emotional

injury from Defendant[']s conduct."  *Plaintiff's Memorandum in Opposition to Motion*

*for Summary Judgment*, at p. 5 (Docket No. 33-2).

Title 42 U.S.C. § 1997e(e) provides that "[n]o Federal civil action may be brought

by a prisoner confined in a jail, prison or other correctional facility for mental or

emotional injury suffered while in custody without a prior showing of physical injury."

In order to meet this standard, an inmate must have suffered a physical injury which is

more than *de minimis* (insignificant).  *Oliver v. Keller*,  289 F.3d 623, 629 (9th Cir. 2002).

Here, Plaintiff did not suffer a physical injury at all.  Under Plaintiff's version of the

facts, Plaintiff "blocked" Officer's Cole's hand with his own hand.  Plaintiff suffered no

injury to his hand.  Accordingly, his Eighth Amendment claim for compensatory damages

for emotional distress is subject to dismissal with prejudice.  Plaintiff's claim for punitive

damages is not subject to the physical injury requirement, but is subject to dismissal as

discussed directly below.

**MEMORANDUM ORDER - 4**

**E.      Failure to State a Claim**

The Court agrees that Plaintiff's entire Eighth Amendment claim – whether for

compensatory or punitive damages – is subject to summary judgment for failure to state a

claim.  The most Plaintiff can show is that Defendant Cole attempted to grab him.  There

is no allegation that Defendant actually did grab him.  Plaintiff's claim does not arise to

an Eighth Amendment claim.

To arise to the level of an Eighth Amendment violation, the deprivation alleged

must be objectively sufficiently harmful, *Farmer v. Brennan*, 511 U.S. 825, 834 (1994),

or, in other words, sufficiently "grave" or "serious."  *Wilson v. Seiter*, 501 U.S. 294 (1991).

In *Whitley v. Albers*, 475 U.S. 312 (1986), the Court explained:

> Not every governmental action affecting the interests or well-being of a
> prisoner is subject to Eighth Amendment scrutiny, however.  After
> incarceration, only the unnecessary and wanton infliction of pain . . .
> constitutes cruel and unusual punishment forbidden by the Eighth
> Amendment. To be cruel and unusual punishment, conduct that does not
> purport to be punishment at all must involve more than ordinary lack of due
> care for the prisoner's interests or safety.

*Id*. at 319 (internal citations and punctuation omitted).

Determining whether there has been an Eighth Amendment violation turns upon

whether force was applied in a good faith effort to maintain or restore discipline or in a

malicious and sadistic way for the very purpose of causing harm.  *Whitley v. Albers,* 475

U.S. 312, 320-21 (1986).  Relevant to that determination are such factors as the need for

the application of force, the relationship between the need and the amount of force that

was used, and the extent of injury inflicted.  *Id.* at 321.  Moreover, " '[p]rison

**MEMORANDUM ORDER - 5**

administrators . . . should be accorded wide-ranging deference in the adoption and

execution of policies and practices that in their judgment are needed to preserve internal

order and discipline and to maintain institutional security.' " *Id.* at 321-22 (quoting *Bell v.*

*Wolfish,* 441 U.S. 520, 547 (1979)).  That deference should be afforded to prison

officials' confrontations with prisoners, as well as to officials' efforts to implement

prophylactic or preventative measures to reduce breaches of prison discipline.  *Id.*

In this case, Plaintiff states in deposition that he did not know if Officer Cole was

going to grab him or hit him: "Well, I don't know if he – if he was going to strike me or

grab me.  I don't know that."  *Affidavit of Roger Gabel*, Exhibit A, Plaintiff's Deposition

Transcript, at 13:11-13 (Docket No. 29-3).

Plaintiff's witnesses all state that Officer Cole tried to grab Plaintiff or physically

take Plaintiff's ID tag from Plaintiff's body.  Several of the witnesses also discuss

Plaintiff's response to Officer Cole.

The first witness, Jason Grist, declares:

   I, Jason Grist, witnessed a C/O having a bad day.  Try to take Pugsley's
ID off of him [sic].  He grab[b]ed at Pugsley in an aggressive manner! [H]e
looked as if tr[y]ing to be very pushy!  What was the matter with the C/O
that morning?  But I can tell you he wasn't being very professional in my
opinion.
   Pugsley simply put his hand up to stop the C/O from his aggressive
manner of approach.  He came at Pugsley like he was trying to attack him.
   Pugsley told the officer if he would like his ID just to ask and he would
give it.  I myself would have done the same.
   There is something to be said about personal space.

*Complaint*, at p. 28 (Docket No. 4).

**MEMORANDUM ORDER - 6**

Witness Casey Hayes states only that Cole "tried to grab [Plaintiff] in an aggressive, unprofessional manner."  *Id*. at p. 29.

The third witness, Asencion Ibarra, declares:

   [T]he officer tried to snatch inmate Pugsley's ID.  Pugsley stepped back
   and tried to swipe the officer's hand to keep him from taking his ID.  Then
   Pugsley told the officer that if he wanted his ID, he should have asked for it
   and not try to take it on his own.

*Id*. at p. 30.

In a light most favorable to Plaintiff, as supported by his own statement and his witness statements, the facts show that, as Officer Cole was legitimately trying to move through a crowd of inmates, Plaintiff verbally responded to the command to move aside in a sarcastic manner.  Officer Cole then attempted to obtain the identification of Plaintiff by grabbing Plaintiff or his ID.  Plaintiff put up his hand to stop the touching, at which point his hand made contact with Officer Cole's hand.  There is nothing in the record to support Plaintiff's speculation that Officer Cole may have been attempting to strike him.  Plaintiff himself is unable to say that Officer Cole's intent was to strike, rather than to grab him or his ID tag.  Even though one witness described Officer Cole's approach as looking like Cole "was trying to attack [Plaintiff]," the statement shows that Plaintiff responded to the lunge with a statement indicating that Plaintiff understood that Officer Cole was trying to grab his ID tag.  The witnesses' description of Officer Cole's action as an aggressive approach, an unprofessional and pushy attitude, and an invasion of Plaintiff's personal space does not show that Plaintiff's Eighth Amendment rights were

MEMORANDUM ORDER - 7

violated.  An attempt to "grab" Plaintiff or his ID tag was insignificant and caused

Plaintiff no injury whatsoever.

A large crowd of inmates in a small space is certainly a prison situation of concern,

because group violence is extremely dangerous.  When an inmate confronts a correctional

officer in such a situation, the risk level becomes even higher.  Plaintiff may have raised

his hand to the correctional officer in an instinctive manner to protect himself, but it was

Plaintiff's sarcastic retort that precipitated the entire episode.  Nothing in the prison code

allows an inmate to talk back to an officer in that manner.  Rather, Plaintiff's remedy was

to file an Inmate Concern Form and Grievance and complain that the officer was rude.

The officer did not have sufficient time to think in a potentially volatile situation, but

acted quickly to try to quell the confrontation.  These facts do not make out an Eighth

Amendment violation under *Farmer*, *Whitely*, or *Wilson*.  Accordingly, Plaintiff's claims

shall be dismissed with prejudice.

**F.     Due Process**

Plaintiff also asserts due process violations under the Fourteenth Amendment

regarding the issuance and administrative adjudication of his Disciplinary Offense Report

(DOR) arising from the same incident.  Defendants argue that, because Plaintiff's

punishment for the DOR caused no "major disruption in his environment," Plaintiff had

no liberty interest in not being confined in segregation and cannot bring a due process

claim.  *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995).  The Court agrees.  However,

Plaintiff argues that he was convicted of a DOR without any supporting evidence.  That

**MEMORANDUM ORDER - 8**

claim falls outside *Sandin*.  A prisoner has a Fourteenth Amendment substantive due

process right to be free from punishment that is arbitrary and capricious.  *See Burnsworth*

*v. Gunderson*, 179 F.3d 771, 775 (9th Cir. 1999) (due process was violated when a prison

disciplinary hearing board convicted an inmate of escape after that board held a hearing at

which no shred of evidence of the inmate's guilt was presented, even if inmate

demonstrated no cognizable liberty interest); *Nonnette v. Small*, 316 F.3d 872 (9th Cir.

2002) (lack of a fair hearing violates due process, wholly apart from the conditions of

confinement and without regard to the *Sandin* requirements).

Due process requires only "some evidence" to support the prison's disciplinary

decision.  *See Superintendent v. Hill*, 472 U.S. 445 (1985).  Under the "some evidence"

standard, the Court does not examine the entire record, independently assess witness

credibility, or reweigh the evidence; rather, the relevant question is whether there is any

evidence in the record that could support the conclusion.  *Bruce v. Ylst*, 351 F.3d 1283

(9th Cir. 2003).

Here, Defendant Keith Blackwood, the Disciplinary Hearing Officer, relied on the

following evidence to find Plaintiff guilty of the DOR: (1) the statement of Officer Cole;

(2) the statement of witness/inmate Acension Ibarra; and (3) the statement of

witness/inmate Jason Grist.  Blackwood determined that these three statements tended to

show that Officer Cole was reaching for Plaintiff's name tag and Plaintiff knocked

Officer Cole's hand away, and that the statements were more credible than Plaintiff's

statement that he raised his hand in defense because he believed that Officer Cole was

**MEMORANDUM ORDER - 9**

attempting to strike him.  Using the foregoing legal standards, the Court finds that

Plaintiff's DOR conviction was, in fact, based on some evidence.  The volatile situation

of Plaintiff talking back to the officer in a crowd of inmates certainly could constitute

"aggravating circumstances" to support the DOR charge of battery.  Defendant Warden

Sonnen approved the guilty finding.  Because the guilty finding is based on some

evidence, it meets constitutional muster, and Plaintiff's due process claims against

Blackwood and Sonnen are subject to summary judgment, including the claim for

expunction of the DOR.

Plaintiff also argues that Sergeant Williams violated his due process rights by

allowing Correctional Officer Cole to decide whether to issue Plaintiff a DOR.  The Court

earlier informed Plaintiff that he could proceed on this claim but would need to produce

evidence showing that Williams knew that there was no evidence supporting issuance of a

DOR.  Because the Court has already found that there was "some" evidence supporting a

guilty finding on the DOR, this claim is subject to summary judgment.

Plaintiff asserts that Officer Jay Christensen had a duty to investigate employee

misconduct.  Because some evidence existed to support the DOR, Officer Christensen's

alleged failures do not arise to a constitutional level.

## G.     Qualified Immunity Defense

Government officials who act on disciplinary committees functioning within the

prison setting have the defense of qualified good faith immunity available to them.

*Cleavinger v. Saxner*, 474 U.S. 193, 206 (1985).  The *Cleavinger* Court clarified: "All the

**MEMORANDUM ORDER - 10**

committee members need to do is to follow the clear and simple constitutional

requirements of *Wolff v. McDonnell, supra;* they then should have no reason to fear

substantial harassment and liability." *Id.* at 207. Here, given that there was some

evidence supporting Plaintiff's DOR, Defendants Christensen, Williams, Sonnen, and

Blackwood are entitled to qualified immunity.

## H.     State Law Claims - Bond Requirement

Defendants make various arguments as to why Plaintiff's state law claims of

negligence, battery, and assault should be dismissed. The Court declines to impose a

requirement on indigent prisoners to post a bond in order to file suit against state

government officials. Defendants assert that the state law claims should be dismissed for

Plaintiff's failure to post a bond as required by Idaho Code § 6-610, which requires that a

plaintiff, as "condition precedent" to filing suit against a peace officer,

> prepare and file with, and at the time of filing the complaint in any such
> action a written undertaking with at least two sufficient sureties in an
> amount to be fixed by the court conditioned upon the diligent prosecution of
> such action, and in the event judgment in the said cause shall be against the
> plaintiff, for the payment to the defendant of all costs and expenses that
> may be awarded against such plaintiff including a reasonable attorney's fee
> to be fixed by the court.

Defendants rely on *Pigg v. Brockman*, 314 P.2d 609 (Idaho 1957), which required

dismissal of such a case filed without a bond, and which did not find anything wrong with

requiring indigent plaintiffs to comply with I.C. § 6-610. Defendants fail to recognize

that, in 1977, the Idaho legislature added I.C. § 31-3220, which allowed Idaho courts to

waive filing fees, costs, and security for indigents.

**MEMORANDUM ORDER - 11**

However, in 1996, the legislature divided I.C. § 31-3220 into two separate

sections, § 31-3220, applicable to indigent nonprisoner litigants, and § 31-3220A,

applicable to indigent prisoner litigants.  The provision that "filing fees, costs, and

security" may be waived remained in the nonprisoner section, but the prisoner section

included only that "court fees" may be waived.  The exclusion of "costs and security"

does not appear to comport with the amended statute's "Statement of Purpose,"which was

"to place prison and jail inmates on an equal footing with other civil law litigants

concerning claims against the state and counties" and to accomplish the following five

"disincentives to the filing of frivolous claims": (1) "a provision for full or partial

payment of court filing fees by prisoners; (2) a requirement for prisoners to file an

affidavit of indigency concerning an inability to pay costs of litigation; (3) authority for

the court to dismiss a claim that the court finds to be frivolous, or fails to state a claim

upon which relief can be granted; (4) the potential for institutional disciplinary action for

malicious claims and/or false testimony; and (5) provisions making prisoner's assets more

susceptible to execution."  S.B. 1394, 53rd Leg., 2nd Sess. (Idaho 1996).  The "Statement

of Purpose" also specifically notes that the legislation was intended to "preserv[e] the

right of inmates to file meritorious claims."  *Id.*

The "disincentives" are very specific and do not address lack of ability to obtain a

bond as a disincentive; rather, the "disincentives" include what may be considered an

alternative to a bond, the allowance of the state or county to collect judgments by "direct

**MEMORANDUM ORDER - 12**

levy" upon prisoner trust accounts and property without obtaining writs of execution

when a judgment for defense costs is assessed against a prisoner.  *See* I.C. § 11-108.

The Idaho Supreme Court has not addressed the applicability of I.C. § 31-3220A

to I.C. § 6-610 in any opinion.  In light of the legislature's later enactment of statutes

protecting the right of indigents to bring meritorious claims against the state and counties,

this Court does not believe that the reasoning of *Pigg v. Brockman* would have continuing

applicability in the context of indigent litigants.  It appears that the Idaho legislature, in

enacting  I.C. § 31-3220A, simply did not contemplate situations in which a prisoner

might be required to post security as a prerequisite to pursuing a cause of action.  If  I.C. §

31-3220A is read to require prisoners to post such security, it is clearly contrary to the

law's stated purposes of preserving inmates' rights to file meritorious claims and placing

inmates on equal footing with nonprisoner indigents in their ability to sue the state and

counties.   Therefore, because it is not clear that the state courts would bar plaintiff's state

law claims for failure to post a bond, this Court will not bar them.[1]

---

[1]Because the Court determines that Idaho would not bar this claim, the Court does not undertake
an analysis under *Hanna v. Plumer*, 380 U.S. 460, 465-67 (1965), and *Erie R.R. Co. v. Tompkins*,
304 U.S. 64, 78 (1938), to determine whether the state waiver rule or the federal waiver rule
would apply.  The Court does, however, note that the federal rule on waiver of security, 28
U.S.C. § 1915(a) provides, in pertinent part:

>  any court of the United States may authorize the commencement, prosecution or defense
>  of *any* suit, action or proceeding, civil or criminal, or appeal therein, without prepayment
>  of fees and costs or security therefor, by a person who makes affidavit that he is unable to
>  pay such costs or give security therefor (emphasis added).

Further, the Supreme Court explained that the purpose of this statute was to ensure that no
person "shall be denied an opportunity to commence, prosecute, or defend an action. . . 'in any
court of the United States' solely because his poverty makes it impossible for him to pay or
secure the costs."  *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 342 (1948) (citing

**MEMORANDUM ORDER - 13**

## I.    Merits of Plaintiff's State Law Claims

Plaintiff has brought forward insufficient evidence to show that he can meet the

elements of his state law claims.  As Defendants point out, this is not merely a claim

between two ordinary citizens, but a claim between an inmate and a correctional officer,

which implicates Idaho's governmental immunity provisions.  Idaho Code § 6-904

provides that "[a] governmental entity and its employees acting within the course and

scope of their employment and without malice or criminal intent shall not be liable for

any claim which: . . . [a]rises out of assault [or] battery . . . committed by an employee."

The Idaho Supreme Court has explained: "When a battery is committed by an employee

while acting beyond the scope of employment or is committed by an employee with

malice or criminal intent, liability attaches to the individual employee."  *Limbert v. Twin*

*Falls County*, 955 P.2d 1123, 1125 (Idaho 1998).

Here, Plaintiff has brought forward no evidence showing that Officer Cole was

acting beyond the scope of his employment or that he tried to grab Plaintiff or his name

tag "with malice or criminal intent."  Plaintiff's witnesses' statements show that (1)

Officer Cole was trying to get Plaintiff's name tag to identify the inmate who was

"talking back" to him, and that (2) Plaintiff responded to Officer Cole's attempt to grab

him in a manner showing that Plaintiff understood that Officer Cole was trying to get his

name tag.  These facts do not support an assault or battery claim that would not be

_____

predecessor to § 1915(a)).

**MEMORANDUM ORDER - 14**

protected by Idaho's governmental immunity statutes.  Accordingly, the assault and battery claims are subject to summary judgment.

Plaintiff also asserts that Officer Cole's actions were negligent.  To prove negligence, a plaintiff must bring forward evidence showing the following: "(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of the defendant's duty; (3) a causal connection between the defendant's conduct and the plaintiff's injury; and (4) actual loss or damage." *Nelson v. Anderson Lumber Co.*, 99 P.3d 1092, 1100 (Idaho Ct. App. 2004).   Plaintiff's claim fails because he has failed to show duty.  Plaintiff has pointed to nothing showing that a correctional officer has a duty to refrain from physically taking or trying to take an inmate's name tag from his person in order to identify him, where no injury results to the inmate.  *Cf. Belcher v. U.S.*, 511 F.Supp. 476, 483 (D. Pa. 1981) (Federal officer had no duty to avoid touching plaintiff's elbow, nor did he act unreasonably in touching plaintiff's elbow to encourage him to proceed down the stairs with the officers; therefore, the officer was not negligent).

An officer most certainly has a duty to refrain from injuring inmates but, here, no breach of that duty has been shown because no injury occurred.  Accordingly, Plaintiff's negligence claim fails.

**MEMORANDUM ORDER - 15**

## III.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

1.   Plaintiff's Motion to Extend Time to File Response (Docket No. 31) is

     GRANTED.

2.   Defendants' Motion for Summary Judgment (Docket No. 29) is

     GRANTED.  This case is dismissed with prejudice.



DATED:  **June 27, 2005**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

**MEMORANDUM ORDER - 16**